# United States District Court
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| MONTASIR HOSSAIN | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:23-CV-2494-S |
| | § | |
| THE BOEING COMPANY | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant The Boeing Company's Motion for Summary Judgment ("Motion") [ECF No. 42]. The Court has reviewed the Motion, Defendant's Brief in Support ("Defendant's Brief") [ECF No. 49], Plaintiff Montasir Hossain's Response to the Motion ("Response") [ECF No. 46], Defendant's Reply in Support of Summary Judgment [ECF No. 47], the summary judgment evidence, and the applicable law. For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion.

## I. BACKGROUND

This is an employment discrimination case with allegations of religious discrimination and retaliation for taking federally protected medical leave. In June 2022, Plaintiff transferred from Defendant's commercial division to another division, joining Mark Montilla's team as a supply chain specialist. App. of Exs. to Def.'s Br. ("Defendant's Appendix") [ECF No. 49-1] 100 ¶ 2. Before joining Montilla's team, Plaintiff notified Montilla that he was a Muslim and would need to attend weekly prayer. *Id.* at 101 ¶ 6. Montilla accommodated Plaintiff's request to attend prayer on Fridays. *Id.* at 95 at 27:1-12, 101 ¶ 6. At least once, Montilla asked Plaintiff when his prayer time was. *Id.* at 33-34 at 112:9-113:11, 87-88. And beginning around October 2022, Montilla asked Plaintiff frequently if he could change his prayer times, to which Plaintiff responded that he could not. *Id.* at 32 at 111:7-15, 38 at 142:10-20. Montilla also would repeatedly ask Plaintiff whether he could meet with Montilla during these scheduled prayer times, despite his knowledge

of when Plaintiff's prayer time was. *Id.* at 32 at 111:15-25. Further, Montilla would frequently set meetings with Plaintiff at 3:00 p.m., which was when his scheduled prayer time ended. *Id.* at 33 at 112:3-8.

Plaintiff testified in his deposition that Montilla denied Plaintiff his prayer time on two occasions because of important meetings. *Id.* at 37 at 133:3-14. Montilla denied this allegation in his deposition, testifying that he never assigned Plaintiff work that would conflict with his prayer, never told him there was too much work to do that would impede his prayer obligation, and never told him it was inconvenient for him to go to prayer. *Id.* at 95-96 at 27:16-28:4. Aside from the two occasions Plaintiff identified, Plaintiff admits that Montilla allowed him to attend his prayer time every Friday. *Id.* at 38 at 142:6-11.

In early October 2022, Montilla emailed a human resources ("HR") representative about placing Plaintiff on a Performance Improvement Plan ("PIP") due to his deficient job performance. *Id.* at 101-02 ¶ 8, 110. Montilla's emails to the HR representative documented multiple concerns with Plaintiff's performance. *Id.* at 107-10. For example, Montilla had begun requiring Plaintiff to substantiate his overtime with "proof of emails and transactions," as he believed Plaintiff was overexaggerating his overtime hours. *Id.* at 109. Montilla claims he was also concerned with Plaintiff's repeated requests to work from home or leave work early. *Id.* Later that same month, Montilla met with Plaintiff and told him that Montilla was placing him on a sixty-day PIP. *Id.* at 102 ¶ 10. This meeting was the first time Plaintiff and Montilla met. *Id.* at 24 at 84:22-25.

In early November 2022, Plaintiff notified Michael Glebe, his team lead, that he had undergone surgery and would need to use paid time off ("PTO"). *Id.* at 82-84, 141 ¶ 2. After Glebe emailed the team about Plaintiff's PTO, Montilla followed up individually with Plaintiff. *Id.* at 81-83. Montilla reprimanded Plaintiff for not communicating his need for PTO and

2

flexibility with his work schedule directly to him. *Id*. Montilla also asked for a doctor's note, which he explained was "standard practice" to outline the expected recovery timeline and medical necessity of the PTO. *Id*. After this exchange, Plaintiff filed an ethics complaint with Defendant's HR department, alleging that Montilla inappropriately asked Plaintiff personal medical questions, asked for a doctor's note, talked about a PIP in their first one-on-one meeting, was not flexible with his requests to work from home while granting flexibility to others, and asked for a detailed outline of his overtime. *Id*. at 119 ¶ 2. The HR department determined that the complaint did not require investigation by an investigation team as there were no complaints of hostile work environment, retaliation, or disparate treatment based on a protected trait. *Id*. at 119-20 ¶ 3. The HR department did, however, refer the complaint to Montilla's senior manager. *Id*.

As HR processed Plaintiff's ethics complaint, the sixty-day period set out in Plaintiff's PIP continued. Over the course of this period, Montilla met with Plaintiff frequently to follow up on the PIP and documented on an approximately bi-weekly basis the areas of deficient performance. *Id*. at 102 ¶ 11, 105-06. But after the PIP expired, Montilla determined that Plaintiff had not improved his performance in all required areas. *Id*. at 102 ¶ 11. On January 5, 2023, Montilla and an HR representative met to discuss Plaintiff's lack of progress on the PIP. *Id*. at 102 ¶ 12, 129 ¶ 4. On January 6, 2023, Montilla made the decision to terminate Plaintiff. *Id*. at 102 ¶ 13, 105. Montilla and HR then began working through Defendant's employee termination procedures in preparation to terminate Plaintiff. *Id*. at 103 ¶ 14.

On January 17, 2023, Plaintiff officially requested leave under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 et seq. Def.'s App. 117. According to Montilla, this was the first day he was notified of Plaintiff's request for FMLA leave, and he immediately paused his impending termination of Plaintiff. *Id*. at 103 ¶ 15. Plaintiff testified that Montilla was

angry and made direct, sarcastic comments "in front of" Plaintiff. *Id.* at 30 at 102:4-7. Plaintiff further testified that Montilla "was very hostile towards the idea of [Plaintiff] taking the FMLA time off during one of our one-on-one meeting[s]" and told him that his medical leave "was going to take a toll, like, would make it difficult for the team to achieve its goal." *Id.* at 39 at 158:8-16. According to Plaintiff, Montilla made the following sarcastic comment: "So . . . you are going to be enjoying those six weeks of vacation?" App. of Exs. to Resp. ("Plaintiff's Appendix") [ECF No. 46-2] 31 at 103:1-3. Further, Plaintiff testified that he and Glebe had a conversation sometime before Plaintiff requested FMLA leave where Glebe confirmed that Montilla was not on board with Plaintiff's FMLA and suggested to Plaintiff that he "might actually lose [his] job" and that he should "start looking for job[s] in other companies or other department[s]." *Id.* at 34 at 196:8-23. Glebe, however, has stated that he was not aware of Plaintiff's request for FMLA leave until after Plaintiff's leave had already started. Def.'s App. 141 ¶ 3.

Plaintiff's FMLA leave began on January 30, 2023, and ended on March 6, 2023. *Id.* at 149 ¶ 2. On March 14, 2023, when Montilla returned from vacation, he fired Plaintiff. Pl.'s App. 35 at 197:12-25. Since his termination, Plaintiff has failed to secure subsequent employment. Def.'s App. 16 at 53:15-18. A job search log produced during discovery demonstrates that Plaintiff searched for jobs from April 10, 2023, to October 4, 2023. *Id.* at 14-15 at 44:21-45:9, 40-65. Plaintiff used this job search log to apply for unemployment benefits with the Texas Workforce Commission. *Id.* at 14-15 at 44:21-45:17. Plaintiff also applied to a Master of Business Administration program with the University of Florida near the end of 2022, which he began in May 2023. *Id.* at 6 at 24:12-18, 10 at 28:6-8.

After his termination, Plaintiff sued Defendant, bringing claims for religious discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and retaliation in violation of the FMLA. Pl.'s Original Compl. ("Complaint") [ECF No 1] ¶¶ 14-15.

## II. LEGAL STANDARD

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, he "must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) showing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322-25. Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "[C]onclusory statements, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010). The Court resolves factual controversies in favor of the nonmoving party

"only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999) (citing *McCallum Highlands, Ltd. v. Wash. Cap. Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

### III. ANALYSIS

The Court will first examine Defendant's argument that Plaintiff's claim for religious discrimination fails as a matter of law. Next, the Court will consider Defendant's argument that Plaintiff's FMLA retaliation claim also fails as a matter of law. Lastly, the Court will address Defendant's argument that it is entitled to summary judgment on its affirmative defense that Plaintiff has failed to mitigate his damages and thus is not entitled to recover lost wages as damages.

### A. Title VII Claim

Title VII prohibits employers from discriminating against "any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion."[1] 42 U.S.C. § 2000e-2(a)(1). A plaintiff can bring claims for religious discrimination based on multiple theories, including hostile work environment, disparate treatment, and failure to accommodate.

In his Complaint, Plaintiff brings a Title VII discrimination claim based on religion explicitly under a theory of hostile work environment. Compl. ¶ 14. But in Plaintiff's Response, he seems to argue also that he was a victim of disparate treatment, *see* Resp. 8-12 (citing to and applying case law laying out the framework for a disparate treatment claim), and that Defendant failed to accommodate his religion, *see id.* at 6-8 (citing to and applying case law laying out the framework for a failure to accommodate claim). To the Court's knowledge, Plaintiff raises the

---

[1] Religion includes "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j).

theories of disparate treatment and failure to accommodate for the first time in response to the Motion. Generally, "a legal claim raised for the first time in response to a defendant's motion for summary judgment is not properly pled." *Austin v. Wal-Mart Stores Tex., L.P.*, No. 3:05-CV-1687-M, 2006 WL 2859367, at \*2 (N.D. Tex. Oct. 5, 2006) (citing *Fisher v. Metro. Life Ins.*, 895 F.2d 1073, 1078 (5th Cir. 1990); *Cutrera v. Bd. of Supervisors*, 429 F.3d 108, 113 (5th Cir. 2005)). But the Court finds that Defendant was on notice of Plaintiff's intent to assert disparate treatment and failure to accommodate theories based on the Title VII claim and facts alleged. Plaintiff did not have to use the "magic words" of "disparate treatment" or "failure to accommodate" in his Complaint to preserve any Title VII discrimination claim based on those theories. *See Arredondo v. Schlumberger Ltd.*, 583 F. Supp. 3d 783, 800 (W.D. Tex. 2022) (holding that the plaintiff did not waive a *quid pro quo* sexual harassment claim under Title VII and citing a Fifth Circuit case for the proposition that "[a]lthough the complaint does not use those words, a complaint need not outline all elements of a claim nor use any 'magic words' to state a claim" (quoting *Portis v. First Nat'l Bank of New Albany*, 34 F.3d 325, 332 n.14 (5th Cir. 1994))). And even if Plaintiff waived those theories of religious discrimination by omitting them from the Complaint, it is inconsequential. Under each of the three theories, Plaintiff's claims fail. The Court addresses each theory in turn.

### *i. Hostile Work Environment*

The Court concludes that Plaintiff's hostile work environment claim cannot survive summary judgment. To prevail on this claim, Plaintiff must show that: (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the harassment affected a term, condition, or privilege of employment; and

(5) Defendant knew or should have known of the harassment and failed to take prompt remedial action. *E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 399 (5th Cir. 2007) (citation omitted).

Plaintiff fails to establish the fourth element, harassment affecting a term, condition, or privilege of employment. "For harassment to alter the conditions of a person's employment, 'the conduct complained of must be both objectively and subjectively offensive.'" *Price v. Valvoline, L.L.C.*, 88 F.4th 1062, 1066 (5th Cir. 2023) (quoting *WC&M Enters.*, 496 F.3d at 399). Relevant considerations in determining whether harassment is objectively offensive include the frequency and severity of the conduct, whether the conduct is physically threatening or humiliating or a mere offensive utterance, and whether the conduct interferes with the employee's work performance. *Id.* at 1066-67 (citation omitted). "No single factor is determinative." *WC&M Enters.*, 496 F.3d at 399 (citation omitted). "Simple teasing, offhand comments, and isolated incidents (unless extremely serious)" are not objectively offensive conduct that would alter the conditions of a victim's employment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (cleaned up); *see also Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 347-48 (5th Cir. 2007).

Plaintiff has not presented any evidence of conduct that is objectively offensive enough to alter the conditions of his employment. Plaintiff points to Montilla: (1) repeatedly asking Plaintiff when his prayer time was, (2) asking Plaintiff frequently if he could change those prayer times or meet during those prayer times, (3) setting meetings for right after Plaintiff's prayer time ended, and (4) denying Plaintiff his prayer time on two occasions. *See* Resp. 7.[2] While Plaintiff might have been annoyed by this conduct, none of it is objectively offensive.

---

[2] Plaintiff does not explicitly refer to the second and third categories of Montilla's conduct as evidence of a hostile work environment in his Response, *see* Resp. 7, but in his deposition, Plaintiff pointed to this conduct as evidence of Montilla's hostility toward his religion, *see* Def.'s App. 32 at 111:7-25, 33 at 112:3-8, 38 at 142:10-20.

8

The first three categories of conduct, while frequent, are annoyances that are not sufficiently severe, physically intimidating, or humiliating enough to support a hostile work environment claim. *Compare Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 438-39, 443-45 (5th Cir. 2011) (reversing district court's grant of summary judgment against the plaintiff where he was subjected to two months of verbal ridicule and insults regarding his religion after requesting time off to attend a religious event), *with Latif v. Locke*, No. A-07-CV-644-LY, 2009 WL 3261562, at *7-9 (W.D. Tex. Oct. 8, 2009) (granting summary judgment against the plaintiff where evidence only showed that a supervisor routinely expressed annoyance as to the plaintiff's time off for prayer services), *report and recommendation adopted by* Order on R. & R. (W.D. Tex. Oct. 28, 2009), ECF No. 36.

Moreover, Plaintiff failed to present any evidence that these categories of conduct interfered with his work performance. *See Williams v. Allied Waste Serv.*, No. 1:09-CV-705, 2010 WL 3257733, at *8 (E.D. Tex. June 30, 2010) (granting summary judgment against the plaintiff where his testimony demonstrated that the alleged harassment did not interfere with his work performance), *report and recommendation adopted by* 2010 WL 3257730 (E.D. Tex. Aug. 16, 2010); *Latif*, 2009 WL 3261562, at *8 (granting summary judgment against the plaintiff since, among other reasons, he offered no evidence that the alleged harrassment "interfered with the performance of his duties").

As to the fourth category of conduct, Plaintiff's case is even weaker. Montilla's denials of Plaintiff's prayer time on two occasions were isolated incidents that were not sufficiently frequent, severe, physically threatening, or humiliating enough to constitute objectively offensive conduct. *See Butler v. MBNA Tech., Inc.*, 111 F. App'x 230, 234-35 (5th Cir. 2004) (affirming district court's grant of judgment as a matter of law against the plaintiff where the only viable allegation of a

hostile work environment was a single incident in which a coworker posted a picture of a Taliban leader with a quote referring to a "jihad" in the plaintiff's cubicle). And Plaintiff did not present any evidence that these two isolated incidents interfered with his ability to do work. *See Williams*, 2010 WL 3257733, at \*8; *Latif*, 2009 WL 3261562, at \*8. Because he has not pointed to evidence of conduct that is objectively offensive, Plaintiff has not established that he was the victim of harassment that affected a condition of his employment. Thus, Plaintiff's hostile work environment claim fails.

### ii. Disparate Treatment

The Court also determines that Plaintiff's disparate treatment theory cannot survive summary judgment. Where, as here, a plaintiff provides no direct evidence of discrimination, to establish a prima facie claim of disparate treatment, the plaintiff must "rely on circumstantial evidence using the *McDonnell Douglas* burden-shifting analysis." *Wittmer v. Phillips 66 Co.*, 915 F.3d 328, 332 (5th Cir. 2019). Under this framework, the plaintiff must show that: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) similarly situated employees who were outside his protected class were treated more favorably." *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). Once the plaintiff establishes a prima facie case, "the burden shifts to the employer to show it had a legitimate, nondiscriminatory reason for [the adverse employment action]." *Id.* (citation omitted) If the employer meets this burden, "the presumption of discrimination disappears, and the burden shifts back to the plaintiff to show either that the proffered reason was a pretext for discrimination, or that the plaintiff's protected status was another motivating factor for the decision." *Id.* (citing *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007)).

Here, Plaintiff fails to establish a prima facie case of discrimination. While he seems to argue that he was a victim of disparate treatment, Plaintiff does not provide any evidence or allegations of any similarly situated non-Muslim employees who were treated more favorably. *See* Resp. 8-12; *see also Mindrup v. Goodman Networks, Inc.*, No. 4:14-CV-157, 2015 WL 5996362, at *4-5 (E.D. Tex. Oct. 14, 2015) (dismissing disparate treatment claim where the plaintiff failed to produce any evidence of a similarly situated employee treated more favorably). Because Plaintiff cannot establish the fourth prong of his prima facie case, Plaintiff's disparate treatment claim fails.

### iii. Failure to Accommodate

The Court further concludes that Plaintiff's failure to accommodate claim cannot survive summary judgment. To evaluate such claims, courts use a burden-shifting framework similar to the *McDonnell Douglas* framework. *See Davis v. Fort Bend County*, 765 F.3d 480, 485 (5th Cir. 2014). Under this framework, the plaintiff must first establish a prima facie case of religious discrimination by showing that (1) he held a bona fide religious belief; (2) his belief conflicted with a requirement of his employment; (3) his employer was informed of his belief; and (4) he suffered an adverse employment action for failing to comply with the conflicting employment requirement. *Id.* (quoting *Tagore v. United States*, 735 F.3d 324, 329 (5th Cir. 2013)). If the plaintiff establishes this prima facie case, the burden shifts to the employer to show that the accommodation "would cause them an undue hardship, or that they have offered an alternative reasonable accommodation to resolve the conflict." *Bruff v. N. Miss. Health Servs., Inc.*, 244 F.3d 495, 499-500 (5th Cir. 2001) (citation omitted).

Plaintiff has failed to establish a prima facie case of failure to accommodate. First, Plaintiff has not demonstrated that his belief conflicted with a requirement of his employment. The record

reflects that Montilla allowed Plaintiff to attend Friday prayer every week and that his attendance did not conflict with any requirement of his employment. Plaintiff testified that on two occasions he was not allowed to go to his prayer service. But these were isolated incidents, and Plaintiff's acquiescence to an employment requirement that caused him to miss two prayer services is not sufficient to meet his burden. *See Austin*, 2006 WL 2859367, at \*9 (applying the same modified *McDonnell Douglas* framework to a state law claim and noting that "*acquiescence* in a business requirement that conflicts with a religious belief is [not] sufficient to allege a prima facie case of religious discrimination").

Second, Plaintiff has not demonstrated that his failure to comply with an employment requirement resulted in an adverse employment action. As an initial matter, because the Court has determined that Plaintiff's attendance of prayer services was not in conflict with any employment requirement, he cannot establish the fourth element of the prima facie case. *See Ellis v. Schneider Nat'l, Inc.*, No. 5:21-CV-00025, 2023 WL 7204481, at \*6 (S.D. Tex. Sept. 26, 2023). But even assuming his attendance of prayer services conflicted with an employment requirement, Plaintiff does not connect his attendance to an adverse employment action. Since Plaintiff began working for Montilla in June 2022, he regularly attended prayer services almost every Friday up until his termination in March 2023. Drawing all reasonable inferences in the light most favorable to Plaintiff, an almost year-long practice of allowing Plaintiff to attend weekly prayer services before terminating him does not create an inference that Plaintiff was fired for attending prayer services. *See id.* at \*7 (granting summary judgment against the plaintiff because he failed to connect the alleged conflicting employment requirement with any adverse employment action); *Mindrup*, 2015 WL 5996362, at \*7 (denying summary judgment where plaintiff was terminated 32 hours after refusing to adhere to employment requirement because of his religious belief). And Plaintiff

has failed to present any evidence of, or even allege, any other employment requirement with which he failed to comply, thus resulting in an adverse employment action. If anything, the evidence reflects that Montilla fired Plaintiff for his alleged deficient performance and not for attending prayer services during work hours. *See, e.g.*, Def.'s App. 101-02 ¶ 8, 107-110. Therefore, Plaintiff's failure to accommodate claim fails.

### *B. FMLA Claim*

As to Plaintiff's FMLA retaliation claim, the Court finds that genuine issues of material fact exist such that a reasonable jury might return a verdict in favor of either party. Accordingly, the Court denies the Motion as to Plaintiff's FMLA retaliation claim.

### *C. Mitigation of Damages*

As to Defendant's affirmative defense of Plaintiff's failure to mitigate damages, the Court finds that genuine issues of material fact exist such that a reasonable jury might return a verdict in favor of either party. Accordingly, the Court denies the Motion as to Defendant's affirmative defense of failure to mitigate damages.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion for Summary Judgment [ECF No. 42]. The Court **GRANTS** the Motion as to Plaintiff's Title VII claim against Defendant. This claim is **DISMISSED WITH PREJUDICE**. The Court **DENIES** the Motion as to Plaintiff's FMLA claim and Defendant's affirmative defense of failure to mitigate damages.

**SO ORDERED.**

SIGNED January 17, 2024.

**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**

13